# Carlisle v. Weil.

May 24, 1949.

Bader & Maratta and Harold R. Marquette for appellant.

Carl K. Helman for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On May 12, 1947, appellant, Ivan Carlisle, filed an action seeking a writ of forcible detainer against appellee, Leo Weil, before a Justice of the Peace in Jefferson County. Weil had entered and taken possession of the property under a written lease. The writ was sought on the ground that the tenant had breached certain covenants upon his part to be performed, and which hereinafter will be set out. On trial before the Magistrate, appellee was found guilty and the Court ordered restitution of the premises to appellant. On the following day a traverse bond was executed by appellee, and the case was transferred to the Jefferson Circuit Court, wherein a trial was held on the 9th day of December, 1947. At the conclusion of the testimony introduced by appellant, the Court sustained appellee's motion for a peremptory instruction and directed the jury to return a verdict finding appellee not guilty. Judgment was entered accordingly, appellant's motion for a new trial was overruled, and an appeal to this Court granted.

The written lease was for a term beginning April 15, 1942 and ending April 15, 1947, "with option for another five year period." The covenants which appellant claims were breached by appellee are "that he (ap-

pellee) will use and occupy said premises, and said fixtures, in a careful, safe and proper manner, and will carefully conduct and guard all fires that may be conducted thereon; that he will not commit or suffer any waste therein, * * *; that he will not use or occupy said premises, or permit the same to be used or occupied, for any purpose deemed extra-hazardous on account of fire or otherwise; * * *.'' Another covenant which he claimed was violated was that appellee agreed to fire the furnace from 7:00 P. M. to 7:00 A. M. each night and morning. The first floor of the building was used in the operation of a restaurant, as was contemplated by the parties. The second floor of the building contains two apartments, one of which is occupied by appellee, and the other was occupied by appellant until, under the testimony of appellant, it became untenantable. Since the Court directed the verdict at the close of the evidence introduced by appellant without requiring appellee to introduce any evidence in defense of the action, the testimony, which we now will examine, consists largely of that of appellant himself; although we believe it to be fortified and corroborated in almost every particular by photographs of the premises introduced in evidence for this purpose.

Appellant testified that on two or three different occasions a door near the cookstove caught on fire and burned. This was caused by the cooks strewing grease all over the stove and on the floor under the stove. The grease would seep through the floor into the basement, and approximately a gallon of grease clung to and, at the time of the trial, was hanging on pipes extending from the basement to the ground floor. The connections to the stove were in good condition when leased by appellee, but they became so clogged that they had to be turned on with pliers. There was linoleum on the floors when leased but that was destroyed and never replaced. Two holes have worn, or been cut, through the ground floor, and they were repaired only by nailing a plank over the top of one of them. Appellant has provided a place to deposit hot coals or clinkers, taken from the furnace. Appellee was in the habit of placing cardboard boxes on these hot coals, thus enhancing the danger of fire. A hydraulic doorstop on a door was broken off, and the door was broken in two. Appellee placed the

doorstop under a desk, did not refit it to the door, and nailed the door together with eightpenny nails which had to be bent over on the back side. A motor and fan belonging to appellant were allowed to burn out for lack of cleaning and oiling. They were taken down and not replaced. An advertising sign was placed on the roof of the building by appellee, creating a leak in the roof, causing water to seep through the ceiling onto the floor of the barroom. Venetian blinds were torn from their seats and merely propped up in the windows. Dishwater and slop were thrown through a window and screen at the rear of the building. It ran down the side of the wall around the house and onto the highway. A three-compartment copper sink was placed under the bar by appellant upon demand of the State Board of Health. This was removed and placed on the outside of the building during appellee's tenure. Because of failure of appellee to clean the grease trap serving the kitchen, grease poured into a dry well which was rendered useless. This necessitated the digging of another well which appellant did at his own expense. The second dry well, because of appellee's failure to clean the grease trap, likewise was rendered useless and a third well was dug. These wells are thirty-two feet deep, the sides are lined with brick, and cost approximately $350 each to construct. Finally appellant built a second grease trap, but because it was not properly cleaned, the water and refuse overflowed and drained around the corner of the house on to the highway, becoming so bad that some cars were mired in front of the premises. Finally appellant built another grease trap and turned the kitchen refuse into it, first having separated it from the system which served the remainder of the property. He dug another dry hole to take care of the two faucets in the kitchen and tunneled under to this hole, but appellee permitted this well to stop up and run out into the highway. The garbage was burned in what appears in the photograph to be a metal drum located ten feet from the building. This gave off such noxious odors that appellant vacated his apartment and moved to a house he built on property adjacent to the premises under lease. The present occupant of the apartment complains because of the same condition. Because appellee failed to place sanitary cans in the women's washroom all dispos-

434

als were made through the sewer, stopping it up, causing the commode to overflow to the floor and run into the dining room. The commode was in a very dilapidated condition as shown by the picture. The lids on the reservoir of the commode were removed, the seat and other parts of the commode were broken. Because of the unsanitary condition created in the rest rooms, water and refuse backed up from the sewer as deep as six inches in the basement, requiring appellant to wear boots to enable him to fire the furnace. On one occasion he saw a large bag of cabbage and a large bag of potatoes lying in this swill and observed appellee's employees preparing it to serve to customers. When fuses burned out, appellee placed penny coins behind them, holding them in by nails and using bolts in place of fuses, thereby creating fire traps. Appellant further testified that in the entire five years appellee occupied the premises he had never fired the furnace. Appellee, after business hours, permitted faucets to remain on, whereby water was wasted and cast in unusual and unnecessary quantities into the dry well. On several occasions in passing through the kitchen to fire the furnace, appellee discovered a gas jet on, but not lighted.

As we have said, the photographs introduced by appellant substantiate his testimony in nearly every particular. We do not recall any case in which the violations of covenants have been more clearly or convincingly established than in this case. We would be reluctant to make that statement were it not for the fact that the physical evidence presented by the photographs clearly presents the picture drawn by the verbal testimony of appellant. Certainly this evidence was sufficient, at least, to require submission of the issue to the jury, and the Court erred in refusing to do so.

Appellant complains that certain words were stricken from the contract after it was executed by the parties, but that question was not presented on the trial of the case and cannot be considered here. Appellant likewise attacks the contract of lease insofar as it purports to grant appellee an option to renew, or extend, as being too vague and uncertain for enforcement and as being unilateral. We deem it unnecessary to discuss that question in this opinion, but will reserve our right to do so in

the event that another appeal becomes necessary. The judgment is reversed with directions that appellant be granted a new trial, to be conducted in a manner consistent with this opinion.

Judgment reversed.